UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEO M. ABBY,

        Petitioner,                    Case No. 08-15333
                                                          Honorable David M. Lawson
v.                                                                   Magistrate Judge Paul J. Komives

JOHN PRELESNIK,

        Respondent.
_____/

### ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, OVERRULING PETITIONER'S OBJECTIONS, AND DENYING PETITION FOR WRIT OF HABEAS CORPUS

      Petitioner Leo M. Abby was convicted by a jury in the Saginaw County, Michigan circuit court of second-degree murder and sentenced to 40 to 60 years in prison. After his convictions were affirmed by the Michigan appellate courts, Abby filed a *pro se* petition for a writ of habeas corpus in this Court under 28 U.S.C. § 2254. The case was referred to Magistrate Judge Paul J. Komives, who filed a thorough report recommending that the petition be denied. The petitioner has filed timely objections to the report and recommendation. The case is before the Court for *de novo* review.

I.

      The magistrate judge's report includes a summary of the facts, which in turn was taken from the petitioner's appellate brief filed in the state court of appeals. The facts need not be repeated here in detail; a brief summary will do. The murder victim was Calvin Tubbs, also known as Calvin Little and Bukie. The crime came to light when parts of Tubbs's dismembered body were found in plastic garbage bags in a 100-foot area near 25th Street in Buena Vista Township. Tubbs had been missing for several days at the time of the discovery.

There was no direct evidence offered at trial of the murder or the petitioner's complicity in it. The case was entirely circumstantial. However, the State called witnesses to show that the petitioner and the deceased knew each other well, and the deceased did work on the petitioner's rental properties. The petitioner was the person last seen with the deceased, which occurred about a week before the body parts were found.

The State called Derrick Taylor as a witness; he knew both the petitioner and the deceased. Taylor testified that he had a conversation with the petitioner in which the petitioner stated that he was interested in selling cocaine and implied that he sold marijuana. Taylor testified that the petitioner had made a statement to the effect that the deceased knew about and was involved in the petitioner's business. Taylor also said that about four weeks before Tubbs disappeared, the petitioner stated that Tubbs had told other individuals that the petitioner had drugs, and that these other individuals threatened the petitioner. Another witness, Eugenia Hardy, testified that the deceased had told her at the beginning of October 2003 that he and the petitioner were going to try to buy 100 pounds of marijuana.

Jerry Boose, the petitioner's brother, testified that on the day Tubbs was last seen, the petitioner called him wanting to borrow Boose's chainsaw. The petitioner called back later, told Boose that the chainsaw did not work, and asked if Boose could provide him with another chainsaw, offering to pay Boose for it later. Boose testified that during the second conversation, he heard another male voice in the background discussing what type of saw was necessary, although he could not identify the voice. When Boose asked the petitioner to whom the other voice belonged, the petitioner did not respond. After a short conversation, the petitioner informed Boose that he would

obtain a different saw elsewhere. The petitioner left the chainsaw in their father's garage, where Boose retrieved it.

Victor Hunter, the petitioner's cousin, testified that the petitioner contacted him sometime in late October asking to borrow a saw. Hunter loaned the petitioner a battery-powered reciprocating saw; the petitioner told him he needed it to cut some tree limbs at a rental property. The petitioner returned the saw to a store owned by Boose. Hunter sent his other cousin, Tommy McCune, to pick up the saw. Hunter said the saw appeared in its normal state when it was returned, except the blade was missing and was returned to him in a garbage bag.

Ernest Luera testified that on November 4, 2003 he found a severed leg in or around his front yard on 25th Street in Buena Vista Township. He contacted the police. When the police arrived at the scene, it was raining, and the leg was covered by a police evidence blanket. Sergeant Sean Waterman testified that the leg appeared to have been cut away, rather than broken or torn.

Sergeant Timothy Jones testified that the next day, he and his dog along with several other K-9 teams searched the area around Luera's house. The K-9 teams found four bags containing human remains approximately a block away from the house. The bags contained pieces of the legs and arms. The torso and head were never found.

Kathleen Boyer, an evidence technician, testified that each body part was surrounded by several layers of bags. Fingerprints were taken from the body parts, and it was determined that the body parts belonged to the decedent. Fingerprints found on the bags themselves were identified as belonging to the petitioner. An additional set of prints from the bags could not be identified. Boyer also testified that one of the bags also contained scissors and a knife.

Dr. Kanu Virani testified that the legs and arms had been cut from the body post-mortem. Dr. Virani testified that the bones could have been cut by a jigsaw or a circular saw, but that they were made by a power instrument rather than a hand instrument. Dr. Virani stated that the flesh was likely cut by a knife.

Tool mark expert Ryan Lerrison testified that the cuts on the bones were made by a straight-edged saw blade, such as a hacksaw. Lerrison testified that the cuts could have been made by a Dewalt reciprocating blade. Trace evidence and serology expert Tani Watkins testified that the Dewalt reciprocating saw recovered from Victor Hunter, which the petitioner had borrowed, had human tissue on it. DNA expert Amy Gordon testified that this human tissue belonged to the decedent, according to the DNA tests.

Evidence also was offered that the petitioner possessed a pistol, which was recovered from his home when he was arrested. DNA tests on samples recovered from the trigger area matched the petitioner and another unknown donor. There was no direct evidence that the gun was the murder weapon.

At trial, the petitioner was represented by retained counsel James Piazza and James Gust. After the jury was selected, Gust moved to postpone the proofs in the case because Piazza was engaged in another trial. The trial court denied the motion and the trial proceeded.

After conviction and sentence, the petitioner filed a direct appeal. The Michigan Court of Appeals affirmed the petitioner's conviction, but remanded the case to the trial court for resentencing. *People v. Abby*, No. 262365, 2007 WL 602562 (Mich. Ct. App. Feb. 27, 2008). Abby then sought leave to appeal, and the Michigan Supreme Court denied leave. *People v. Abby*, 480 Mich. 1003, 742 N.W.2d 359 (2007) (table). While Abby was waiting for the decision from the

Michigan Supreme Court, the trial court resentenced him to the same 40-to-60-year sentence. This time the Michigan Court of Appeals affirmed the sentence. *People v. Abby*, No. 279498, 2009 WL 30454 (Mich. Ct. App. Jna. 6, 2009).

On December 31, 2008, the petitioner filed this petition for a writ of habeas corpus, making the following claims:

> 1. Petitioner Was Denied His Constitutional Right To Due Process Because There Was Insufficient Evidence To Establish That Defendant Murdered The Decease.
>
> 2. The Trial Court Reversibly Err In Refusing To Give CJI.2d 16.15 Intervening Cause Of Death Contrary To The U.S. Const. V, VI. IV; Const. art. 1, sec. 17, 20.
>
> 3. The Trial Court Reversibly Err In Giving An Aiding And Abetting Instruction Where There Was No Evidence Of A Principle Thus Violating Petitioner's Constitutional Due Process Rights To Have The Jury Make A Determination On Actual Evidence Which Was Properly Presented On Actual Evidence Which Was Properly Presented At Trial.
>
> 4. The Record Is Devoid Of Proof Of The Cause Of Death. Did The Trial Court's Decision To Allow Inadmissible, Irrelevant Evidence And Prosecutorial Argument That Petitioner Engaged In Drug Trafficking Violate Petitioner's Federal And State Due Process Rights And Requires A New Trial Pursuant To US Const. Ams V, VI, XIV, And Const. 1963, art 1, secs. 17, 20.
>
> 5. The Record Is Devoid Of Proof Of The Cause Of Death, Repeated Evidence And Prosecutorial Argument That Petitioner Habitually Carried A Gun And Shot Decedent Violated Petitioner's Federal And State Due Process Rights And Requires A New Trial Pursuant To U.S. Const. Ams V, VI, IV And Const. 1963, art 1, Sec., 17, 20.
>
> 6. The Prosecutor's Conduct Was So Egregious That It Wholly Undermined The Fairness Of The Trial, Rendered The Verdict Unreliable, And Deprived Petitioner Of Due Process And An Impartial Trial By Jury As Guaranteed By The V, VI, And XIV Ams To The Federal Constitution.
>
> 7. Trial Counsel Was Ineffective Throughout Trial, Depriving Petitioner Of A Defense In Violation Of His Federal And State Constitutional Rights To Counsel And To Present A Complete And Effective Defense.

8. Petitioner Was Deprived Of Counsel At Both Trial And Sentencing In Violation Of His Federal And State Constitutional Rights Under The Sixth And Fourteenth Amendments.

9. There Was Insufficient Evidence To Establish The Corpus Delicti Of The Charges, In Violation Of Petitioner's Due Process Right To Be Convicted On Sufficient Evidence Beyond A Reasonable Doubt.

In a 56-page report, Magistrate Judge Komives recommended that the petition for writ of habeas corpus be denied. The defendant filed timely objections.

II.

Objections to a report and recommendation are reviewed de novo. 28 U.S.C. § 636(b)(1). The Sixth Circuit has stated that "[o]verly general objections do not satisfy the objection requirement." *Spencer v. Bouchard*, 449 F.3d 721, 725 (6th Cir. 2006). "The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious." *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). "'[O]bjections disput[ing] the correctness of the magistrate's recommendation but fail[ing] to specify the findings . . . believed [to be] in error' are too general." *Spencer*, 449 F.3d at 725 (quoting *Miller*, 50 F.3d at 380).

It appears that the petitioner intended to object to the magistrate judge's findings on each claim that the petitioner originally raised when applying for the writ. However, the majority of the petitioner's objections are merely restatements of his original claims with no argument attached. Those objections do not explain why the petitioner believes the magistrate judge's conclusions are erroneous.

Claim VIII, in which the petitioner argues that he was denied counsel at trial and during sentencing, is the only claim for which the petitioner presents a substantive objection, rather than a restatement of the claim.

A.

For claims I through VI and IX, the petitioner has not provided the Court with sufficient information to discern the dispositive and contentious issues. The Court has reviewed the record and the magistrate judge's report and recommendation, and the Court agrees with the magistrate judge's discussion of the applicable law and his application of it to the issues raised by the petitioner. On *de novo* review, the Court reaches the same conclusion on all those claims, save one.

The petitioner's seventh claim asserts ineffective assistance of counsel, describing several instances of alleged deficient performance. One item focuses on trial counsel's failure to object to the prosecutor's reference during closing argument to the petitioner's pre-arrest silence. The magistrate judge concluded that the prosecutor's remark was proper, so defense counsel's failure to object could not be considered substandard. The Court cannot accept the underlying premise of that conclusion, but the Court agrees that relief on that claim is not warranted.

During closing argument, the prosecutor referenced a visit to the petitioner's girlfriend's home by the police, and stated:

> And what – what is the defendant doing at that point in time? He's hiding in a bedroom with two detectives sitting at his kitchen table and the perfect opportunity to walk out of the bedroom and, say, hi, Detective Pfau, hi, Detective Smith, what can I do for you? Let's straighten this misunderstanding out. But does he do that? No. He sits in the other room. His girlfriend covers for him.

Trial Tr., Vol. VIII, Mar. 9, 2005 at 10. The Michigan Court of Appeals found that this statement was not plain error. *Abby*, 2007 WL 602562, at *11. The magistrate judge found that there was no clearly established Supreme Court precedent that would render the state court's decision contrary to or an unreasonable application of federal law.

-7-

The Court agrees that there is no controlling Supreme Court precedent on this precise issue, but the Sixth Circuit has held that the use of pre-arrest silence as substantive evidence of a defendant's guilt violates the Fifth Amendment's privilege against self-incrimination. *Combs v. Coyle*, 205 F.3d 269, 283 (6th Cir. 2000). In *Combs*, the Sixth Circuit analyzed the prosecution's use of the defendant's statement to a police officer that the officer needed to "talk to [the defendant's] lawyer" "as a comment on prearrest silence." *Id*. at 279. The court held that the prosecution's use of that evidence to refute the defendant's defense of intoxication was improper under the Fifth Amendment. *Id*. at 283. Further, the court found that defense counsel's failure to object to the prosecution's use of this pre-arrest statement "clearly fell below an objective standard of reasonableness" and called the failure to object "inexplicable." *Id*. at 286. Surely, a failure to object to similar evidence five years after the decision in *Combs* is even less reasonable. Therefore, this Court is loathe to say that the petitioner has not demonstrated deficient performance, in light of controlling Sixth Circuit precedent.

However, under the standard in *Strickland*, the petitioner must demonstrate that counsel's deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the prejudice prong, the petitioner must "show[] that counsel's errors were so serious as to deprive the defendant of a fair trial." *Ibid*. That burden is not easily met. There must be "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. The petitioner has not made such a showing in this case. The prosecutor's argument on this point was brief, and there was ample circumstantial evidence tying the petitioner to the crime. Moreover, this case can be distinguished from *Combs*: in that case,

the court identified several serious errors by defense counsel that justified habeas relief, while here the petitioner has identified only one error with arguable merit. *Combs*, 205 F.3d at 291. No relief, therefore, is justified with respect to claim VII.

B.

As to Claim VIII, the petitioner argues that he was denied counsel at trial and during sentencing. The petitioner objects to the magistrate judge's recommendation that this Court find the trial court's refusal to allow the trial to be delayed in order to allow the petitioner's second attorney to attend trial was reasonable. The petitioner contends that the Sixth Amendment right to counsel extends to a defendant having the right to be represented by the counsel of his or her choosing, with courts having little leeway to interfere with that choice. The petitioner argues that this right derives from the defendant's right to control his own defense. He argues that the state appeals court failed to consider the fact that Mr. Gust and Mr. Piazza played different roles in his defense and that the petitioner did not waive his right to be represented by Mr. Piazza.

The petitioner also argues that where a petitioner brings a Sixth Amendment denial of counsel claim, he need only show that counsel was absent during a critical stage of the proceedings; prejudice is assumed. The petitioner asserts that his defense relied on having both attorneys present during trial, and that the absence of Mr. Piazza for the length of the trial qualifies as a denial of counsel. Further, the petitioner contends that focusing on the fairness of the trial with Mr. Gust present is not proper. The petitioner argues that the right of a defendant to choose counsel derives from the fundamental right to counsel guaranteed by the Sixth Amendment, rather than from the right to a fair trial. The petitioner contends that to argue that the petitioner received adequate representation is to confuse the right to counsel of choice with the right to effective counsel.

The petitioner also takes issue with the magistrate judge's reliance on *Ungar v. Sarafite*, 376 U.S. 575 (1964), which the magistrate judge took to hold that the trial judge has discretion in determining whether a continuance should be granted. That exercise of discretion, the magistrate judge determined, should only be overturned if the decision was arbitrary and capricious. The petitioner argues that denying a continuance in this case interfered with his Sixth Amendment right to counsel of choice and was therefore arbitrary and unreasonable, and that in this case, it constituted "a myopic insistence upon expeditiousness in the face of a justifiable request for a delay [that] render[ed] the right to defend with counsel an empty formality." Obj. to R&R at 6 (quoting *Ungar*, 376 U.S. at 588; citing *Lainfiesta v. Artuz*, 253 F.3d 151, 156 (2d Cir. 2001); *United States v. Nichols*, 841 F.2d 1485, 1502 (10th Cir. 1988); *Ford v. Israel*, 701 F.2d 689, 692 (7th Cir. 1983)). The petitioner charges that the trial court wrongfully held the petitioner responsible for the schedule and notification process of the system. The petitioner asserts that the decision to move forward with the trial rested on the incorrect grounds that Mr. Gust was a competent and experienced attorney, and that Mr. Piazza was not necessary. However, the petitioner states several facts which, the petitioner alleges, shows that Mr. Piazza was an integral part of the defense team and strategy. First, Mr. Piazza filed a notice of appearance well before the trial date. Second, Mr. Gust asked the prosecution to call their witnesses out of order until Mr. Piazza was available. Third, the petitioner objected to the fact that Mr. Piazza was not present at the beginning of trial. This, the petitioner alleges, is enough to show that the decision by the trial court to continue without Mr. Piazza was arbitrary and capricious, and acted as a denial of the petitioner's Sixth Amendment right to the counsel of his choosing.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. This constitutional right is applicable to the states through the Fourteenth Amendment. *Serra v. Michigan Dep't of Corrs.*, 4 F.3d 1348, 1351 (6th Cir. 1993) (citing *Gideon v. Wainwright*, 372 U.S. 335, 344-45 (1963)).

"A criminal defendant who desires and is financially able to retain his own counsel 'should be afforded a fair opportunity to secure counsel of his own choice.'" *Ibid*. (quoting *Powell v. Alabama*, 287 U.S. 45, 53 (1932)). The Supreme Court has held "that erroneous deprivation of the right to counsel of choice, 'with consequences that are necessarily unquantifiable and indeterminate, unquestionably qualifies as "structural error."'" *United States v. Gonzalez-Lopez*, 548 U.S. 140, 150 (2006) (quoting *Sullivan v. Louisiana*, 508 U.S. 275, 282 (1993)). However,

> [n]ot every restriction on counsel's time or opportunity to investigate or to consult with his client or otherwise to prepare for trial violates a defendant's Sixth Amendment right to counsel. *See Chambers v. Maroney*, 399 U.S. 42, 53-54 (1970). Trial judges necessarily require a great deal of latitude in scheduling trials. Not the least of their problems is that of assembling the witnesses, lawyers, and jurors at the same place at the same time, and this burden counsels against continuances except for compelling reasons. Consequently, broad discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary "insistence upon expeditiousness in the face of a justifiable request for delay" violates the right to the assistance of counsel. *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964).

*Morris v. Slappy*, 461 U.S. 1, 11-12 (1983). "[T]he essential aim of [the Sixth] Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat v. United States*, 486 U.S. 153, 159 (1988).

Both the magistrate judge and the Michigan Court of Appeals analyzed this aspect of the petition under *Ungar*, because they believed that the petitioner's request that Mr. Piazza be present

-11-

was, in effect, a request for a continuance. In discussing whether the petitioner was denied his right to counsel of choice at trial, the court of appeals stated:

> Here, defendant, in essence, sought a continuance until such time as Piazza was available to join his lead counsel at trial. The determination whether to allow a defendant a continuance to secure counsel of his own choosing is a matter within the traditional discretion of the trial court; and in making that determination, the court should apply a test of reasonableness. *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964); see also *People v. Jackson*, 467 Mich. 272, 276; 650 NW2d 665 (2002). As the Supreme Court stated in *Ungar, supra*, the answer to the question whether the denial of a continuance is an abuse of discretion so as to violate the federal constitution "must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." In light of the reasons presented to the trial court, its decision to proceed with trial was within the principled range of outcomes and not, therefore, an abuse of its discretion. [*People v.*] *Babcock*, [469 Mich. 247, 666 N.W.2d 231 (2003)]; *Maldonado* [*v. Ford Motor Co.*, 476 Mich. 372, 719 N.W.2d 809 (2006)].
>
> In reviewing a trial court's decision to deny a continuance, this Court considers the following factors: (1) whether the defendant is asserting a constitutional right; (2) whether the defendant has a legitimate reason for asserting the right; (3) whether the defendant was negligent in asserting the right; and (4) whether the defendant is merely attempting to delay trial. *People v. Echavarria*, 233 Mich. App 356, 369; 592 N.W.2d 737 (1999); *People v. Lawton*, 196 Mich. App 341, 348; 492 N.W.2d 810 (1992). Here, defendant is asserting a constitutional right. As noted, the right to counsel of one's choosing is guaranteed by the Sixth Amendment of the United States Constitution. However, while it does not appear that defendant's objection to proceeding without Piazza was merely an attempt to delay trial, that defendant wished merely "to ensure that [he] had the proper representation" by having both Gust and Piazza attend his trial is an insufficiently legitimate reason for asserting this right. Indeed, while the Sixth Amendment affords the right to counsel of one's choosing, "the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat* [*v. United States*, 486 U.S. 153, 159 (1988)]. Here, despite Piazza's inability to attend trial, Gust, who the trial court described as "very qualified and experience" [sic] attorney, stood ready to represent defendant at trial.
>
> Moreover, while defendant asserted that he understood that Piazza would be present at his trial, both Gust and Piazza, as well as the trial court, seemed to clearly understand Piazza's limited role in defending defendant in this matter. Thus, defendant's failure to assert his alleged right to Piazza's presence at trial was also negligent. *Echavarria, supra*. Under these circumstances, and considering that trial

-12-

> in this matter had been scheduled for nearly five months, the trial court did not abuse its discretion in refusing to delay trial. Defendant was not, therefore, denied his federal constitutional right to counsel.

*Abby*, 2007 WL 602562, at * 14-15 (footnotes omitted). The court of appeals addressed the *Gonzalez-Lopez* issue in a footnote, stating

> Defendant's reliance on *Gonzalez-Lopez, supra,* for the proposition that it is irrelevant whether defendant in fact received the effective assistance of competent counsel is misplaced. Although the Court in *Gonzalez-Lopez* held that "[w]here the right to be assisted by counsel of one's choice is *wrongly* denied, . . . it is unnecessary to conduct an ineffectiveness or prejudice inquiry to establish a Sixth Amendment violation," the parties in *Gonzalez-Lopez* conceded on appeal that the trial court had erroneously deprived the defendant of his right to counsel of his choosing. *Id*. at [144]. (Emphasis added). Thus, the sole legal issue before the Court was what level of prejudice, if any, must be shown once it was determined that an erroneous deprivation of one's counsel has occurred. *Id*. at [144-45]. Here, however, the issue is whether the trial court's refusal to delay trial was an abuse of its discretion and thus an erroneous deprivation of counsel in violation of the Sixth Amendment.

*Id*. at *15 n. 8. The court of appeals, applying Supreme Court precedent, found that the petitioner needed to show not only that he was deprived of his counsel of choice, but that the deprivation was wrongful in order to have a claim for a violation of his Sixth Amendment right to counsel of choice. Because the decision not to grant a continuance was not wrongful, the state court reasoned, the petitioner was not wrongfully deprived of his counsel of choice in violation of the Sixth Amendment.

In *Gonzalez-Lopez*, the Supreme Court emphasized the wrongful denial of counsel of choice, holding:

> Where the right to be assisted by counsel of one's choice is *wrongly* denied, therefore, it is unnecessary to conduct an ineffectiveness or prejudice inquiry to establish a Sixth Amendment violation. Deprivation of the right is "complete" when the defendant is *erroneously* prevented from being represented by the lawyer he wants, regardless of the quality of the representation he received.

*Gonzalez-Lopez*, 548 U.S. at 148 (emphasis added).

Recent Sixth Circuit precedent suggests the correctness of the state court's interpretation of *Gonzalez-Lopez* and its procedure in determining whether the petitioner's right to counsel of choice was violated. In *Cobb v. Warden, Chillicothe Correctional Inst.*, No. 11-3278, 2012 WL 688506 (6th Cir. Feb. 29, 2012), the Sixth Circuit held that the state court erroneously applied *Gonzalez-Lopez* because it had found, improperly, that the petitioner's request for new, retained counsel was not "erroneously" denied. *Id*. at *8. The court analysis focused on the validity of the petitioner's reasons advanced to the trial court for wanting to hire a lawyer to substitute for his appointed counsel. *Id*. at *7-8. In this case, the state court engaged in that same analysis when it concluded that the petitioner was not denied "erroneously" the right to proceed with both of his retained lawyers.

The next question is whether the denial of the continuance, and the appeals court's decision upholding that denial, was contrary to or an unreasonable interpretation of clearly established Supreme Court precedent. A continuance may not be denied based on "a myopic insistence upon expeditiousness in the face of a justifiable request for delay." *Ungar*, 376 U.S. at 589. The petitioner objected to the finding of the magistrate judge that the decision by the trial court was reasonable. The petitioner states that the Michigan Court of Appeals and the magistrate judge failed to consider certain factors:

> (1) that Gust and Piazza had divided up the work, (2) that absent Piazza, the adversarial process would be lacking in the area that of defense Piazza was to carry, (3) whether Gust was prepared and capable of taking up the slack of Piazza, (4) the fiber of the defense was woven together through the Petitioner and both attorneys and all played significant roles in the adversarial process, (5) more importantly, Petitioner did not waive his rights to Piazza. Absent Petitioner's consent, it was neither the court nor Piazza's right to waive counsel at such a critical stage.

Pet.'s Obj. at 4. The petitioner also argues that he should not be held responsible for the schedule of the attorneys and the court. He asserts that he hired two attorneys and that they should have both been at trial, and to deny him a continuance to make that possible was arbitrary.

As noted above, trial courts are granted broad discretion on matters of continuances. *Ungar*, 376 U.S. at 589. The Sixth Circuit addressed a similar issue in *Giacalone v. Lucas*, 445 F.2d 1238, 1240 (6th Cir. 1971), stating that "a court may not insist upon expeditiousness for its own sake, but . . . a defendant cannot be allowed to insist upon unreasonable delay or inconvenience in the completion of his trial. What is a reasonable delay varies depending upon all the surrounding facts and circumstances." The court in *Giacalone* held that a trial court did not make an arbitrary decision when it denied a continuance where the attorney in question was in the hospital on a voluntary, non-emergency check-up, there were two other attorneys prepared to represent the client at trial, and the court previously had granted other continuances to the defense. *Id.* at 1243.

In this case, the appeals court found it relevant that the trial had been scheduled for nearly five months and the petitioner had another attorney who was ready and able to represent his interests. The attorneys appeared to agree that the division of tasks relegated to Piazza the responsibility for litigating pretrial motions, and Gust would shoulder the trial burdens. The trial date had been established for several weeks, and there was no evidence that Piazza ever sought relief from his *other* trial responsibility. The state appeals court determined from those facts that the trial court's decision to proceed without Piazza was not an "erroneous" denial of counsel. Reasonable jurists might disagree with that conclusion, but habeas relief does not necessarily follow. The AEDPA imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be "given the benefit of the doubt." *Renico v. Lett*, --- U.S. ---, ---, 130 S. Ct.

1855, 1862 (2010) (finding that the state court's rapid declaration of a mistrial on grounds of jury deadlock was not unreasonable even where "the jury only deliberated for four hours, its notes were arguably ambiguous, the trial judge's initial question to the foreperson was imprecise, and the judge neither asked for elaboration of the foreperson's answers nor took any other measures to confirm the foreperson's prediction that a unanimous verdict would not be reached" (internal quotation marks and citations omitted)). That "deference and latitude," means that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, --- U.S. ---, 131 S. Ct. 770, 786 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The court has suggested that *Richter* holds that the review standard "is even more constricted than AEDPA's plain language already suggests." *Ibid.*

The issue presents a close call, but the Court believes that the scales — already heavily weighted in favor of the state court's decision — must tip against the petitioner. The Court concludes, therefore, the decision not to grant a continuance in this case was not contrary to or an unreasonable application of clearly established law.

### III.

Except as discussed in detail above, the Court agrees with the magistrate judge's statements of the law and his analysis. The Court concludes that the petitioner is not in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petitioner's objections to the magistrate judge's report and recommendation [dkt #11] are **OVERRULED**.

It is further **ORDERED** that the report and recommendation [dkt #10] is **ADOPTED**.

It is further **ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: March 26, 2012

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 26, 2012.

s/Deborah R. Tofil
DEBORAH R. TOFIL

---